IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01846-PAB

GEORGE J. GUIDRY,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

     Defendant.

_____

**ORDER**
_____

     This matter comes before the Court on plaintiff George J. Guidry's Complaint

[Docket No. 1] filed August 28, 2008.  Plaintiff, through counsel, seeks review of the

final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's

claim for disability insurance benefits under Title II of the Social Security Act (the "Act"),

42 U.S.C. §§ 401-33.  The Court has jurisdiction to review the Commissioner's final

decision under 42 U.S.C. § 405(g).[1]

**I.  BACKGROUND**

     On December 15, 2004, Dr. Guidry applied for disability benefits, alleging he was

unable to work beginning July 15, 2003.   After his claim was initially denied, an

administrative law judge ("ALJ") held a hearing on March 6, 2006.  R. at 19.  The ALJ

held a supplemental hearing by telephone on October 11, 2006.  R. at 19.  In a decision

_____

     [1]Neither party requested oral argument.  *See* Joint Case Management Plan
[Docket No. 10] ¶ 9.

dated December 3, 2006, the ALJ found that "the claimant has the following severe impairments: coronary artery disease (CAD), atrial arrhythmia, osteoarthritis of the cervical spine, mild reactive airways disease, mild left biceps tendinitis, and mild tendinosis/tendonopathy of the right supraspinatous tendon." R. at 21 (citing 20 C.F.R. § 404.1520). The ALJ concluded that these severe impairments did not, alone or in combination, meet or equal one of the listed impairments in the regulations. R. at 23. The ALJ proceeded to find that Dr. Guidry retained the "residual functional capacity to perform the full range of sedentary work," but "should avoid all exposure to temperature extremes or concentrations of dust, fumes and chemicals[,] and is limited to work that is conducted in a low stress environment." R. at 24. Although Dr. Guidry "is unable to perform any past relevant work," the ALJ concluded that he "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy" and, therefore, was not disabled as defined by the Act. R. at 29-30. On June 27, 2008, the Appeals Council declined review, making the ALJ decision the final decision of the Commissioner. R. at 6-8.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because it may have reached a different result based on the record; the

question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## B.  Evaluation of the ALJ's Decision

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

3

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §

404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and
> (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §

404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

Here, the ALJ proceeded through each step of the evaluation process.  The ALJ

concluded that, although Dr. Guidry could no longer work as a neurosurgeon, he retained the "residual functional capacity to perform the full range of sedentary work," but "should avoid all exposure to temperature extremes or concentrations of dust, fumes and chemicals[] and is limited to work that is conducted in a low stress environment."  R. at 24.  Then, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that Dr. Guidry "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy."  R. at 29.  Dr. Guidry contends the ALJ (1) "erred in finding that plaintiff's allegations as to his inability in substantial gainful activity was not supported by the record," and (2) "erred, as a matter of law, in finding plaintiff had transferable skills that would allow him to perform other jobs existing in significant numbers in the national economy," Pl.'s Br. [Docket No. 11] at 10, 16.

## 1.  Credibility Determination

Dr. Guidry argues that the ALJ did not "give adequate consideration to all of the relevant evidence in the record in ruling upon [his] credibility."  Pl.'s Br. at 18.  The Court disagrees.  The ALJ's decision reflects a consideration of "all of the available evidence."  20 C.F.R. § 404.1529(c)(1).  He considered "the medical opinions of [Dr. Guidry's] treating source and other medical opinions" and an evaluation of his "daily activities."  20 C.F.R. § 404.1529(c)(1) & (3)(i).  The ALJ appropriately determined "whether there [we]re any inconsistencies in the evidence and the extent to which there [we]re any conflicts between [Dr. Guidry's] statements and the rest of the evidence, including [his] history, the signs and laboratory findings, and statements by [his] treating

or nontreating source or other persons about how [his] symptoms affect[ed him]."  20
C.F.R. § 404.1529(c)(4).  The ALJ relied upon the opinions of Dr. Guidry's treating
physicians in concluding that he should avoid stressful jobs.  There was no medical
evidence, however, that seriously called into question Dr. Guidry's ability to engage in
sedentary work in a low-stress environment.  The ALJ cited "the claimant's reported
substantial activities that include working at a computer, gardening, skiing, flyfishing,
and traveling." R. at 25.  The ALJ noted that, after the alleged onset date of his
disability, Dr. Guidry had been "branding cattle," "skiing on double black diamond
slopes," "working on his ranch with fence posts and underneath a truck," had "traveled
to Alaska," was exercising regularly, and had "participated in a Porsche driving
experience," among other activities.  R. at 25.[2]  The ALJ then accurately reviewed the
medical records which indicated that, despite Dr. Guidry's conditions and cardiac
events, his physical condition was "not consistent with a disabling level of severity."  R.
at 26.[3]  Indeed, the ALJ cited evidence indicating the ability to perform non-sedentary
work, but gave Dr. Guidry the "benefit of the doubt."  R. at 28.

The Court concludes that the record as a whole fully supports the ALJ's
conclusion that Dr. Guidry retained the functional capacity to perform sedentary work in
a low stress environment.  Indeed, the benefit of the doubt Dr. Guidry received was
substantial.  In short, any claim by Dr. Guidry that he did not retain the capacity to

---

[2]*Cf.* R. at 269 (medical record indicating that Dr. Guidry told his treating physician in March 2004 that "he has never had more fun in his life.").

[3]*Cf.* R. at 325 (providing the result of a June 2004 stress test which "greatly exceeds the expected exercise ability for a 58 year old man").

perform sedentary work in a low-stress environment finds no support in the record.[4]

The ALJ's contrary conclusion regarding Dr. Guidry's capacity for work enjoys more

than substantial support in the record.

_____        *2. Transferability of Skills to Jobs Existing in Significant Numbers*

The vocational expert ("VE") testified that Dr. Guidry could work as a medical

consultant for an insurance company or the government.[5]  R. at 546.  Dr. Guidry argues

that his skills do not, pursuant to the requirements of the Commissioner's regulations,

transfer to such a job.  Pl.'s Br. at 12-13.  Because Dr. Guidry was a person of

"advanced age (age 55 or older)" and was found to be limited to sedentary work, the

Commissioner's burden is higher at step five of the analysis.  *Jensen v. Barnhart*, 436

F.3d 1163, 1165 (10th Cir. 2005) (citing *Emory v. Sullivan*, 936 F.2d 1092, 1094 (10th

Cir. 1991)).  The ALJ could conclude that Dr. Guidry had skills that were transferable to

sedentary work "only if the sedentary work is so similar to [his] previous work that [he]

would need to make very little, if any, vocational adjustment in terms of tools, work

_____

[4]Dr. Guidry does not cite to any evidence in the record supporting a claim that he
cannot perform sedentary work in a low-stress environment.  Rather, Dr. Guidry
contends that reviewing medical files would be stressful to him because he is a "very
slow reader."  R. at 595.  The record did not contain evidence corroborating that Dr.
Guidry's ability to review medical records and information is so limited.  In any event,
the claim does not call into question that Dr. Guidry retained the capacity to perform
sedentary work in a low-stress environment.
        Furthermore, while Dr. Guidry claimed he could not review medical claims
unrelated to neurosurgery, he did not think there was anything that would prevent him
from doing the type of activity required of an insurance company medical consultant.  R.
at 594.

[5]The record includes a case summary from the Utah Division of Disability
Determination Services.  R. at 287-88.  The examiner included the following regarding
Dr. Guidry's functional capacity: "I guess a light RFC.  Claimant has transferable skills
and could work here if he wanted to."  R. at 288.

processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4). This provision does not require very little adjustment in all four areas, but rather only in more than one of the criteria, with very little adjustment overall. *Jensen*, 436 F.3d at 1165. Dr. Guidry contends that a medical consultant position would require a significant adjustment from the health care industry to the insurance or government service, from surgical instruments to office equipment, from an operating room to an office, and from a specialized work process to a generalized one. Pl.'s Br. at 13.

The ALJ applied the appropriate standard when questioning the VE regarding transferability of skills to available jobs. R. at 545-46. In his decision, the ALJ again cited the correct burden at step five and concluded that Dr. Guidry had "acquired work skills from his past relevant work as a surgeon that are transferable" to the position as a medical consultant. R. at 30. Dr. Guidry's claim that the ALJ committed legal error at this stage is unfounded.

Moreover, substantial evidence supports the ALJ's conclusion regarding the transferability of skills. The ALJ concluded that Dr. Guidry "has basic medical skills which allow him to perform the consultant job even outside the area of neurosurgery," R. at 30, and that the VE "indicated . . . that the claimant has acquired skills . . . as a surgeon that include, among others, performing surgery to correct deformities, repair injuries, prevent diseases, and improve function in patients; and to examine patients to verify the necessity for an operation." R. at 29. The VE testified that insurance companies are in the market for medical consultants with medical degrees, regardless of their prior specialty. R. at 554-55. There is ample indication that such skills would apply "across industry lines," Soc. Sec. Ruling 82-41, at least so far as would be

8

required here to move from surgical practice to review of medical files for an insurance

company or the government.[6]

> Social Security Ruling 82-41 provides helpful guidance on this issue:

> Generally, where job skills are unique to a specific work process in a particular industry or work setting, e.g., carpenter in the construction industry, skills will not be found to be transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry. On the other hand, where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.

The ALJ's conclusion comports with these considerations, and the record provides

substantial evidence supporting the finding that Dr. Guidry's medical skills are

transferable to the medical consultant position.  In other words, Dr. Guidry can "be

expected to perform [the job of a medical consultant] at a high degree of proficiency

with a minimal amount of job orientation."  *Id.*; *see Jensen v. Barnhart*, 436 F.3d 1163,

1165 (10th Cir. 2005).

> After complying with the requirement that he identify the "acquired work skills,"

the ALJ was required to cite the "specific occupations to which the acquired work skills

---

[6]Dr. Guidry also contends that the ALJ failed to determine how much stress would be involved in work as a medical consultant. Pl.'s Br. at 13.  He argues that the ALJ incorrectly characterized the VE's testimony when the ALJ "found that the position of consultant was not a stressful job," claiming that the "VE's specific testimony was that it was low-stress compared to the occupation of surgeon."  Pl.'s Br. at 13 (citing R. at 550).  This is not a fair reading of the entirety of the VE's testimony on this point.  *See* R. at 549-50. There was substantial evidence supporting the ALJ's conclusion that medical consultant is a low-stress position.

are transferable" and include "[e]vidence that these specific . . . jobs exist in significant

numbers in the national economy."  Soc. Sec. Ruling 82-41.  The ALJ here relied on the

testimony of a vocational expert to provide testimony on both issues.  20 C.F.R. §

404.1566(e) ("If the issue in determining whether you are disabled is whether your work

skills can be used in other work and the specific occupations in which they can be used,

or there is a similarly complex issue, we may use the services of a vocational expert or

other specialist.").   Dr. Guidry objects to the ALJ's reliance on the job statistics

provided by the VE.  Pl.'s Br. at 14-15.

The VE testified that the Dictionary of Occupational Titles ("DOT") does not

contain a separate entry for medical consultant, but has an entry covering all

professional consultants and that, likewise, the Occupational Employment Statistics

("OES")[7] provides statistics on consultants generally, but does not provide specific

information on medical consultants.  R. at 546.   Turning to the number of such jobs in

the national economy, the VE testified that insurance companies and the government

employ medical consultants.  R. at 546.  Relying upon OES, the VE compared the

number of consultant jobs in the economy with the statistics regarding industries that

use medical consultants, estimating there were 21,000 medical consultant jobs in the

United States and 1,000 jobs in the region consisting of Colorado, Kansas, Montana,

North Dakota, South Dakota, Utah, Wyoming, and Nebraska.  R. at 547.  He also

compared the number of medical doctors in industries using medical consultants, a

process resulting in an estimated 28,000 jobs in the country and 1,400 in the

[7]OES is a program of the Department of Labor's Bureau of Labor Statistics.

10

aforementioned region.  R. at 547.  In his decision, the ALJ also correctly noted that the

VE "testified that though the claimant is a neurosurgeon, he has basic medical skills

which allow him to perform the consultant job even outside the area of neurosurgery

and thus, the numbers of medical consultant jobs do not need to be adjusted."  R. at

30; *see* R. at 554 (where the VE testified that insurance companies "use the degree

more than the specialty").  The Court finds that the VE's testimony provided a sufficient

basis for the ALJ's determination that a significant number of medical consultant jobs

existed in the national economy.

Finally, Dr. Guidry argues that, even accepting the VE's statistics, they are

insufficient on their face.[8]  Dr. Guidry's emphasis on the numbers alone, however, is

---

[8]In his opening brief, Dr. Guidry objects to the VE's testimony regarding the transferability of skills and his calculation of the number of medical consultant jobs in the national economy.  Not until his reply brief, however, did Dr. Guidry raise the argument that the number of jobs cited by the VE was on its face not "significant."  In light of Dr. Guidry's failure to raise that argument in his opening brief, the Court is not required to consider it.  *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief"); *Hofmann v. Astrue*, No. CV-08-00985-PHX-GMS, 2009 WL 2486011, at *8 n.6 (D.Ariz. Aug. 12, 2009) ("The Court need not consider arguments raised for the first time in a reply brief.").  In his response, however, defendant characterizes Dr. Guidry's argument as consisting of the claim that "the number of medical consultant jobs available was somehow deficient." Def.'s Resp. at 15.  It is at least arguable that Dr. Guidry's reply is responding to that characterization. *See Home Design Services, Inc., v. B & B Custom Homes,* 509 F.Supp.2d 968, 971 (D.Colo. 2007) ("'[R]eply briefs reply to arguments made in the response brief-they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'" [citation omitted] ).  Therefore, the Court will consider the argument. *See Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n. 3 (10th Cir. 2003) ("Although this court generally does not review issues raised for the first time in a reply brief, we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the appellee's brief.") (citations omitted).

inapposite.  The Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  Rather, "each case should be evaluated on its individual merits." *Id.*  Considerations include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on."  *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). "'The decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Id.* (quoting *Jenkins*, 861 F.2d at 1087).

Here, the ALJ's decision reflects appropriate considerations.  *See Trimiar*, 966 F.2d at 1330-32.  He thoroughly examined the level of Dr. Guidry's impairments and gave him the "benefit of the doubt" when limiting him to sedentary work.  The ALJ determined that the VE's testimony appropriately "reconcil[ed] any discrepancies with the DOT."  R. at 30 (citing Soc. Sec. Ruling 00-4p).  And his review of the record revealed no limitations on Dr. Guidry's ability to travel; indeed, the opposite was reflected in the medical records.

Also, it must be remembered that step five requires a showing that a significant number of jobs are reasonably available in the *national* economy.  Dr. Guidry must be unable to "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be

12

hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).  If there is nothing about the claimant's disability that prevents him from accessing jobs in the national economy, the national statistics remain the relevant ones. *See Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (noting that "while . . . travel to and from work is a factor to be considered" when assessing the availability of work, "it refers to intrinsic factors concerning plaintiff's condition, not extrinsic factors such as where plaintiff has chosen to live in relation to any identified regional jobs").

The record here demonstrates that there is nothing intrinsic to Dr. Guidry's impairments that limit his ability to move closer to a medical consulting job available in the national economy; indeed, he travels often and throughout the country and has apparently changed residency from Wyoming to Colorado since applying for disability. *See Lopez Diaz v. Sec'y of Health, Educ. and Welfare*, 585 F.2d 1137, 1140 (1st Cir. 1978) ("A person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience.  Disability insurance is not available to fund his decision to live far from available jobs."); *Cole v. Barnhart*, 293 F. Supp. 2d 1234, 1244 n.1 (D. Kan. 2003) ("'[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy – not just a local area.'") (quoting *Gravitt v. Apfel*, 185 F.3d 874 (table), 1999 WL 476026, at *2 (10th Cir. July 9, 1999), which relied upon *Harmon* and *Lopez Diaz*).  Moreover, as the ALJ and Dr. Guidry discussed during Dr. Guidry's testimony, a medical consultant may be able to review records at home, R. at 596, which would mean no travel is involved.

13

In short, there is no magic number and, under various circumstances, ALJs and

district courts on appeal may reach different conclusions.[9]  In light of the record

evidence here, however, this Court finds there is no basis to upset the ALJ's conclusion

that a significant number of jobs exist in the national economy for somebody with Dr.

Guidry's highly marketable skills.  As the *Trimiar* court stated, "we cannot say that the

record when taken as a whole does not support the ALJ's conclusion.  We do not

presume to interpose our judgment for that of the ALJ." *Trimiar*, 966 F.2d at 1332.  So

too here.

---

[9]As persuasive authority from this district, Dr. Guidry cites *Jimenez v. Shalala*,
879 F. Supp. 1069 (D. Colo. 1995), as finding that "'200-250 jobs spread across
Colorado is not a significant number.'" Pl.'s Reply at 3-4 (quoting *Jimenez*, 879 F. Supp.
at 1076). In *Jimenez*, however, the court did not determine that 200-250 jobs in
Colorado was on its face insufficient. Rather, the court noted the VE's "guarded
testimony" regarding the claimant's ability to perform the cited positions. *See Jimenez*,
879 F. Supp. at 1076 (noting that "all of [the VE's] testimony is hedged"); *id.* ("[The VE]
summarized his initial reaction to the hypothetical, 'I can't really identify jobs where I
feel he would be a competitive employee.'"). Also, the court had already determined
that the hypothetical presented to the VE overstated the claimant's capacity to work.
*See id.* In other words, the court questioned whether 200-250 jobs was a valid number
and, even if it were, whether it was significant in light of all the relevant circumstances in
the case. *See id.* ("In *Trimiar*, neither the court nor apparently the expert had any doubt
that 650-900 unskilled jobs, which existed for the plaintiff in his state, met the significant
numbers test.").
        Dr. Guidry also relies upon *Waters v. Sec'y of Health & Human Servs.*, 827 F.
Supp. 446, 450 (W.D. Mich. 1992), for the proposition that "1,000 jobs existing in the
State of Michigan was not a significant number." *Id.* at 4. *Waters* considered
transferability of skills in a case involving a plaintiff closely approaching advanced age.
Its conclusion that 1,000 jobs concentrated around Detroit was not a significant number,
where plaintiff suffered from a degenerative spine condition limiting his travel, had a
high school education, and lived in the Upper Peninsula of Michigan, however, provides
little guidance here. On this record, the Court is not convinced there is a basis to upset
the ALJ's conclusion. *Cf. Johnson v. Chater*, 108 F.3d 178, 180 n.3 (8th Cir. 1997)
("[*Jimenez* and *Waters*] are unpersuasive . . ., particularly in light of the overall record
before this Court. The cases . . . are all fact-intensive, and none stand for the
proposition that 200 jobs in Iowa is not a significant number.").

## III. CONCLUSION

Upon consideration of the plaintiff's objections and of the record as a whole, I find that the ALJ applied the correct legal standards and reached a decision supported by substantial evidence.  Accordingly, it is

**ORDERED** that the December 3, 2006 decision of the Commissioner that plaintiff was not disabled is **AFFIRMED**.  It is further

**ORDERED** that the Clerk shall forthwith enter judgment in favor of defendant Commissioner and against plaintiff George J. Guidry.

DATED December 10, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge